U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUL 1 0 2008

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

2-08CV-077-J

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | CONSENT DECREE |
| | ) | |
| CONOCOPHILLIPS COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff United States of America, on behalf of the United States Environmental

Protection Agency ("EPA"), has filed a Complaint in this action concurrently with this Consent

Decree, alleging that Defendant ConocoPhillips Company ("ConocoPhillips" or "Defendant")

violated the Clean Water Act ("Act"), 33 U.S.C. § 1251 *et seq.*, at the petroleum refinery that

ConocoPhillips operates in Borger, Texas ("the Facility") in Hutchinson County, Texas.

ConocoPhillips was the owner of the Facility until January 2007, when it transferred the Facility

to WRB Refining LLC ("WRB Refining"), who is the current owner of the Facility.

ConocoPhillips continues to operate the Facility.

Defendant ConocoPhillips has discharged and continues to discharge pollutants into

navigable waters of the United States from the Facility pursuant to the following permits:

National Pollutant Discharge Elimination System Permit No. TX0009148, which was effective

from October 1, 1995 to January 29, 2007 ("NPDES Permit"); and Texas Pollutant Discharge

*[U.S. v. ConocoPhillips (Borger, TX) Consent Decree]*

Elimination System Permit No. WQ0001064000, which became effective January 30, 2007 and remains in effect ("TPDES Permit"). The permits authorize the discharge from the Borger refinery of specified qualities and quantities of effluent via Outfalls 001 through 016 to several receiving waters, which are tributaries of Dixon Creek, Patton Creek, and the Canadian River.

The Complaint alleges that ConocoPhillips violated Section 301 of the Act, 33 U.S.C. § 1311, by exceeding the effluent limits specified in the NPDES Permit at the Facility. Specifically, the Complaint alleges that ConocoPhillips violated effluent limits for whole effluent toxicity from May 1999 through September 2005, inclusive, and that ConocoPhillips violated effluent limits for selenium from May 1999 through September 2006, inclusive. The applicable permit limits during this time period were: for whole effluent toxicity, a 100% 7-day survival rate among test species; and for selenium, a daily average of 0.35 lbs/day and a daily maximum of 0.73 lbs/day. ConocoPhillips does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

EPA has issued three Administrative Orders (AOs) and one Administrative Penalty Order (APO) to Defendant for these and related violations:

    a.    VI-98-3508 (Sept. 4, 1998) – AO for various effluent violations. This AO also notes a fish kill that occurred on or around June 26, 1998.

    b.    VI-99-1603 (April 2, 1999) – APO relating to violations in the September 4, 1998 AO, with an agreed-upon penalty amount of $31,000.

    c.    VI-99-0068 (July 30, 1999) – AO for selenium violations.

    d.    CWA-06-2003-2048 (Aug. 14, 2003) – AO for violations of whole effluent toxicity and selenium limits, as well as certain other effluent violations.

Regarding the discharges in excess of the effluent limitations in the applicable NPDES Permit for whole effluent toxicity, ConocoPhillips installed a Powdered Activated Carbon Treatment system effective October 2005. EPA has determined that this measure appears to have been effective in ensuring whole effluent toxicity compliance from October 2005 to the date of lodging of this Consent Decree.

Regarding the discharges in excess of the effluent limitations in the applicable NPDES Permit for selenium, EPA granted on September 11, 2006 a temporary variance to the Texas Water Quality Standards for aquatic life criteria for selenium in Dixon Creek, pursuant to Section 303(c) of the Act, 33 U.S.C. § 1313(c), and the implementing regulations found at 40 C.F.R. Part 131. The variance lasts for a three-year period with a possibility of extension for additional three-year terms if the circumstances so warrant.

This variance led to a change in the applicable TPDES Permit effluent limit for selenium; the Facility's revised effluent limit for selenium, effective January 30, 2007, is a daily average of 1.32 lbs/day and a daily maximum of 2.63 lbs/day. If site-specific selenium criteria for Dixon Creek are not adopted by the Texas Commission on Environmental Quality and approved by EPA during the three-year variance period (and any extensions thereof, if applicable), the previous selenium limits of a daily average of 0.34 lbs/day and a daily maximum of 0.72 lbs/day will become effective immediately in a re-issued permit, as provided in the 2007 TPDES permit.

ConocoPhillips has selected and undertaken the following measures to address the selenium violations that occurred prior to September 2006, and to aid EPA in determining whether permanent site-specific selenium criteria for Dixon Creek are appropriate:

      a.      Identification and segregation of wastewater streams with highest concentrations

of selenium, including routing of those wastes to a permitted on-site injection well; and

b.  Monitoring of selenium in water, fish tissue and sediment in the Dixon Creek and Canadian River areas affected by the Facility's outfalls.

EPA has determined that these measures appear to have been effective from January 2007 to the date of lodging of this Consent Decree in meeting the revised selenium effluent limits (daily average of 1.32 lbs/day and a daily maximum of 2.63 lbs/day).

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.  This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the Act, 33 U.S.C. § 1319(b), and over the Parties.  Venue lies in this District pursuant to Section 309(b) of the Act, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b), 1391(c), and 1395(a), because ConocoPhillips does business in the Northern District of Texas, the Facility is located in this District, and the alleged violations of the Act occurred in this District.  For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendant, consents to venue in this judicial district, and waives any defenses to

this action concerning jurisdiction or venue.

2.   This Court has jurisdiction over WRB Refining and WRB Refining's obligations in this Decree pursuant to the All Writs Act, 28 U.S.C. § 1651, and Federal Rule of Civil Procedure 19(a).  WRB Refining's obligations are contained in Paragraph 9 of this Decree. For purposes of this Decree, or any action to enforce WRB Refining's obligations in this Decree, WRB Refining consents to the Court's jurisdiction over this Decree and any such action and over WRB Refining, consents to venue in this judicial district, and waives any defenses to this action concerning jurisdiction or venue.

3.   For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Section 301 of the Act, 33 U.S.C. § 1311.

4.   Notice of the commencement of this action has been given to the State of Texas, as required by Section 309(b) of the Act, 33 U.S.C. § 1319(b).

## II.  APPLICABILITY

5.   The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

6.   No transfer of operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented. At least 30 days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written

agreement, to EPA Region 6 and to the United States Department of Justice, in accordance with

Section XIV of this Decree ("Notices").  Any attempt to transfer operation of the Facility without

complying with this Paragraph constitutes a violation of this Decree.

7.   Defendant shall provide a copy of this Consent Decree to all officers,

employees, and agents whose duties might reasonably include compliance with any provision of

this Decree, as well as to any contractor retained to perform work required under this Consent

Decree.  Defendant shall condition any such contract upon performance of the work in

conformity with the terms of this Consent Decree.

8.   In any action to enforce this Consent Decree, Defendant shall not raise as a

defense the failure by any of its officers, directors, employees, agents, or contractors to take any

actions necessary to comply with the provisions of this Consent Decree.

9.   WRB Refining shall allow Defendant access to the Facility as needed for

Defendant to perform Defendant's obligations under this Decree.  WRB Refining shall take no

action that would frustrate or impede the enforcement or implementation of this Decree.

### III.  DEFINITIONS

10. Terms used in this Consent Decree that are defined in the Act or in regulations

promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such

regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are

used in this Consent Decree, the following definitions shall apply:

   a.   "Act" shall mean the Clean Water Act, 33 U.S.C. § 1251 *et seq.*;
   b.   "Complaint" shall mean the complaint filed by the United States in this action;
   c.   "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIII);
   d.   "Day" shall mean a calendar day unless expressly stated to be a working day. In computing any period of time under this Consent Decree, where the last day

would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day;

e. "Defendant" shall mean ConocoPhillips Company;

f. "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

g. "Facility" shall mean the petroleum refinery operated by Defendant and located in Borger, Texas;

h. "Paragraph" shall mean a portion of this Decree identified by an arabic numeral;

i. "Parties" shall mean the United States and Defendant;

j. "Section" shall mean a portion of this Decree identified by a roman numeral;

k. "State" shall mean the State of Texas;

l. "TCEQ" shall mean the Texas Commission on Environmental Quality and any successor departments or agencies of the State of Texas;

m. "Term" shall mean the period of time from the date of entry of this Decree until the date on which the Court issues an order stating that the Consent Decree has been terminated pursuant to Section XVIII of this Decree;

n. "TPDES Permit" shall mean the Texas Pollutant Discharge Elimination System Permit No. WQ0001064000 as issued and potentially amended by TCEQ that is in effect at any given period of time during the effective period of this Consent Decree;

o. "United States" shall mean the United States of America, acting on behalf of EPA.

## IV. CIVIL PENALTY

11. Within 30 days after the Effective Date of this Consent Decree, Defendant shall pay the sum of $1,200,000 (ONE MILLION TWO HUNDRED THOUSAND DOLLARS) as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

12. Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant, following lodging of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Northern District of Texas. At the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record,

together with a transmittal letter, which shall state that the payment is for the civil penalty owed

pursuant to the Consent Decree in United States v. ConocoPhillips Company, and shall reference

the civil action number and DOJ case number 90-5-1-1-08325, to the United States in accordance

with Section XIV of this Decree ("Notices"); by email to acctsreceivable.CINWD@epa.gov; and

to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio  45268.

13.     Defendant shall not deduct the civil penalty paid under this Section in

calculating its federal income tax.

## V. COMPLIANCE REQUIREMENTS/INJUNCTIVE RELIEF

14.     It is the express purpose of the Parties in executing this Consent Decree

that Defendant ConocoPhillips shall perform all measures necessary to achieve and maintain

compliance with the terms of the TPDES Permit that relate to the Facility's discharge of

selenium and/or to the whole effluent toxicity of the Facility's discharge, and compliance with

the portions of Section 301 of the Act and the regulations promulgated thereunder insofar as they

relate to the Facility's discharge of selenium and/or to the whole effluent toxicity of the Facility's

discharge.

15.     As a precondition to the Parties' entrance into this Consent Decree,

Defendant ConocoPhillips installed a Powdered Activated Carbon Treatment (PACT) system at

the Facility in October 2005.  Throughout the term of this Decree, Defendant ConocoPhillips

must continue to properly operate and maintain this PACT system to ensure the integrity of all

controls previously put in place to eliminate whole effluent toxicity violations at the Facility,

unless Defendant replaces those controls with other controls that are equally effective or more effective in eliminating whole effluent toxicity violations.  In addition, ConocoPhillips conducted a technology review in 1999 to identify viable treatment technologies to reduce selenium in treated effluent.  As a result of the study, a disposal well was permitted and constructed for the purpose of disposing of wastewater streams with high concentrations of selenium.  The disposal well was commissioned and began operation on April 16, 2001.  Throughout the term of this Decree, Defendant ConocoPhillips must continue to properly operate and maintain this disposal well, unless Defendant replaces that well with other controls that are equally effective or more effective in minimizing selenium discharges.  ConocoPhillips shall notify EPA of any major change ConocoPhillips proposes to make to whole effluent toxicity treatment controls or to its approach to addressing selenium at the Facility no less than 30 days before making such a change, unless emergency conditions prevent ConocoPhillips from doing so.  A "major change" shall be defined as discontinuing or significantly altering the operation of the PACT system or the injection well.  A "major change" does not include temporary suspension of PACT system or disposal well operation to perform maintenance or annual mechanical integrity tests, nor does it include minor changes in total PACT usage rates that do not affect effluent quality. ConocoPhillips shall make any relevant equipment, machinery, plans and/or documents available to EPA for inspection upon request.  ConocoPhillips shall respond to any written questions from EPA about changes and/or proposed changes in whole effluent toxicity treatment or selenium controls within ten days of receiving such questions.

     16.     Defendant ConocoPhillips shall comply with its TPDES Permit limits for whole effluent toxicity and selenium throughout the Term of this Decree, including but not

limited to the selenium requirements on page 2 ("Total Selenium") and page 14 ("Temporary

Variance to Texas Surface Water Quality Standards") of the TPDES Permit and the whole

effluent toxicity requirements on page 2b ("Whole Effluent Toxicity (WET) limit,"

"Ceriodaphnia dubia," and "Pimephales promelas"), pages 16-21 (all sections) and pages 26-31

(all sections) of the TPDES Permit, which requirements are attached to this document as

Appendix A and incorporated herein.

      17.     Within 90 days after Entry of this Decree, ConocoPhillips will complete

data analysis of the fish population and tissue study in Dixon Creek and the Canadian River

conducted in 2006 and submit a report of the study to EPA.  In addition, ConocoPhillips will

submit to all "EPA Only" parties identified in Paragraph 77 copies of all reports simultaneously

with formal submission to TCEQ.  ConocoPhillips performed two studies of fish tissue and

population in Dixon Creek and the Canadian River to support its request for issuance of a site-

specific standard for selenium in Dixon Creek.  These studies were conducted in May through

June 1999, and June through October 2006.  Reports of the findings of these studies were

submitted to TCEQ and EPA on October 15, 1999, and August 27, 2007, respectively.

      18.     If, during the term of this Decree or after its termination, ConocoPhillips

applies for a new TPDES permit based on an approved site-specific standard for selenium,

ConocoPhillips will consult with EPA Region 6 within 60 days of approval of that site-specific

standard.  If the terms of the TPDES permit do not already include an ambient and fish tissue

monitoring plan that meets the criteria listed in subparagraphs 18a., 18b., and 18c. below,

ConocoPhillips will propose an appropriate ambient and fish tissue monitoring plan during this

consultation.  The additional monitoring plan will be separate from the TPDES permit

requirements, but will be conducted in the same time frame as the term of the TPDES permit. The additional monitoring plan shall include, at a minimum, the following elements:

    a.  Quarterly water column samples from Dixon Creek below the confluence of the unnamed tributary to which the Facility discharges treated effluent;

    b.  Quarterly water column samples above and below the confluence of Dixon Creek with the Canadian River; and

    c.  Biennial selenium levels in fish tissue in Dixon Creek, collected at or below the confluence with the unnamed tributary, and the Canadian River, collected at or below the confluence with Dixon Creek, in a manner consistent with current EPA guidance for implementation of the draft Aquatic Life Water Quality Criteria for Selenium (EPA, November 2004) or subsequent versions.

  If the samples taken under subparagraphs 18a. and 18b. above do not vary by more than +/- 3 parts per million for any four consecutive quarters, the sampling required by such subparagraph shall become annual rather than quarterly.

    19.  <u>Approval of Deliverables</u>.  Defendant shall submit any plan, report, or other item that it is required to submit for approval pursuant to this Consent Decree to EPA. EPA may approve the submission or decline to approve it and provide written comments.  Within 30 days of receiving EPA's written comments, Defendant shall either: (a) alter the submission consistent with EPA's written comments and provide the submission to EPA for final approval, or (b) submit the matter for dispute resolution under Section X of this Decree.  Upon receipt of EPA's final approval of the submission, or upon completion of the submission pursuant to dispute resolution, Defendant shall implement the submission in accordance with the schedule in

the approved submission.  If a resubmitted plan, report, or other item, or portion thereof, is

disapproved in whole or in part, EPA may again require Defendant to correct any deficiencies,

subject to Defendant's right to invoke Dispute Resolution and the right of EPA to seek stipulated

penalties as provided in Section VIII of this Decree.

    20.    Permits.  Where any compliance obligation under this Section requires

Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely

and complete applications and take all other actions necessary to obtain all such permits or

approvals.  Defendant may seek relief under the provisions of Section IX of this Consent Decree

("Force Majeure") for any delay in the performance of any such obligation resulting from a

failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such

obligation, if Defendant has submitted timely and complete applications and has taken all other

actions necessary to obtain all such permits or approvals.

## VI.  SUPPLEMENTAL ENVIRONMENTAL PROJECT

    21.    Defendant shall implement a Supplemental Environmental Project

("SEP"), the Storm Water Solids Removal SEP, in accordance with all provisions of Appendix B

of this Consent Decree.  The SEP shall be completed within 360 days after entry of this Decree.

The purpose of this SEP is to modify the storm water and oily water collection systems to direct

uncontaminated storm water and clean solids away from the oily water treatment system.  Further

purposes are to reduce the amount of solids in the oily water treatment system that otherwise

would have become a listed hazardous waste under RCRA, to reduce the amount of hazardous

waste generated and to improve the overall capacity and quality of the oily water treatment

system at the Facility.  In addition, this project is expected to remove sediment from the

redirected storm water to a catch basin prior to discharge from the storm water outfalls.

22.     Defendant is responsible for the satisfactory completion of the SEP in accordance with the requirements of this Decree.  Defendant may use contractors or consultants in planning and implementing the SEP.

23.     With regard to the SEP, Defendant certifies the truth and accuracy of each of the following:

a.     that all cost information provided to EPA in connection with EPA's approval of the SEP is complete and accurate and that Defendant in good faith estimates that the cost to implement the SEP, exclusive of overhead, employee time and salary, administrative expenses, legal fees and contractor oversight costs, is six hundred thousand dollars ($600,000);

b.     that, as of the date of executing this Decree, Defendant is not required to perform or develop the SEP by any federal, state, or local law or regulation and is not required to perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other action in any forum;

c.     that the SEP is not a project that Defendant was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Decree;

d.     that Defendant has not received and will not receive credit for the SEP in any other enforcement action; and

e.     that Defendant will not receive any reimbursement for any portion of the SEP from any other person.

24.     SEP Completion Report.  Within 30 days after the date set in Paragraph 21 of this Decree for completion of the SEP, Defendant shall submit a SEP Completion Report to the United States, in accordance with Section XIV of this Consent Decree ("Notices").  The SEP Completion Report shall contain the following information:

      a.      a detailed description of the SEP as implemented;

      b.      a description of any problems encountered in completing the SEP and the solutions thereto;

      c.      an itemized list of all eligible SEP costs expended;

      d.      certification that the SEP has been fully implemented pursuant to the provisions of this Decree; and

      e.      a description of the environmental and public health benefits resulting from implementation of the SEP (with a quantification of the benefits and pollutant reductions, if feasible).

25.     EPA may, in its sole discretion, require information in addition to that described in the preceding Paragraph, in order to evaluate Defendant's completion report.

26.     After receiving the SEP Completion Report, the United States shall notify Defendant whether or not Defendant has satisfactorily completed the SEP.  If Defendant has not completed the SEP in accordance with this Consent Decree, stipulated penalties may be assessed under Section VIII of this Consent Decree.

27.     Disputes concerning the satisfactory performance of the SEP and the amount of eligible SEP costs may be resolved under Section X of this Decree ("Dispute Resolution").  No other disputes arising under this Section shall be subject to Dispute Resolution.

28.     Each submission required under this Section shall be signed by an official with knowledge of the SEP and shall bear the certification language set forth in Paragraph 34.

29.     Any public statement, oral or written, in print, film, or other media, made by Defendant making reference to the SEP under this Decree shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action, United States v. ConocoPhillips Company, taken on behalf of the U.S. Environmental Protection Agency under the Clean Water Act."

30.     For federal income tax purposes, Defendant agrees that it will neither capitalize into inventory or basis nor deduct any costs or expenditures incurred in performing the SEP.

## VII.  REPORTING REQUIREMENTS

31.     Defendant shall submit the following reports:

a.      Annually during the Term of this Decree, ConocoPhillips shall submit a report to the United States documenting its compliance with Paragraphs 14-18 above, and additionally summarizing any research and development that ConocoPhillips has performed in that annual period concerning selenium or whole effluent treatment technologies.  Such report shall be certified, pursuant to Paragraph 34, by a high-ranking official of ConocoPhillips as well as by a ConocoPhillips employee who has personal knowledge of conditions at the Facility. Defendant shall submit this report on or before January 31 of each calendar year during the Term of this Consent Decree.

b.      If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, including a violation of any selenium or whole effluent

[U.S. v. ConocoPhillips (Borger, TX) Consent Decree]   15

toxicity limit in the Facility's TPDES Permit, Defendant shall notify the United States of such violation and its likely duration, in writing, within ten working days of the day Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report.  Defendant shall investigate the cause of the violation and shall then submit an amendment to the report to EPA, including a full explanation of the cause of the violation, within 30 days of the day Defendant becomes aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section IX of this Consent Decree ("Force Majeure").

32.     Whenever any violation of this Consent Decree or of any applicable permits, or any other event affecting Defendant's performance under this Decree or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

33.     All reports shall be submitted to the persons designated in Section XIV of this Consent Decree ("Notices").

34.     Each report submitted by Defendant under this Section shall be signed by a high-level official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all
> attachments were prepared under my direction or supervision in
> accordance with a system designed to assure that qualified
> personnel properly gather and evaluate the information submitted.

Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

35.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Clean Water Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

36.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

VIII.   STIPULATED PENALTIES

37.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section IX ("Force Majeure").  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

38.     Late Payment of Civil Penalty.  If Defendant fails to pay the civil penalty required to be paid under Section IV of this Decree ("Civil Penalty") when due, Defendant shall pay a stipulated penalty of $2500 per day for each day that the payment is late.

39.    Permit Effluent Violations.  The following stipulated penalties shall accrue per violation per parameter per day for violations of selenium and/or whole effluent toxicity limits in the TPDES Permit, the relevant portions of which are attached and incorporated herein as Appendix A.

a.    For any Daily Maximum or Single Grab Effluent Limit: $5000 per day;

b.    For any Daily Average (to be computed once a month); $10,000 per month in which the Daily Average is violated;

c.    For any 7-Day Chronic No Observed Effect Concentration of less than 100% for any test species: $10,000 per occurrence.

40.    Ambient Monitoring.  The following stipulated penalties shall accrue per day for failure to perform the ambient monitoring described in Paragraphs 17 and 18 of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 30th day |
| $1000 | 31st day and beyond |

41.    Maintaining Controls.  The following stipulated penalties shall accrue for any violation of the Defendant's duty to give EPA 30 days' notice of any non-emergency change in selenium or whole effluent toxicity treatment controls, as described in Paragraph 15 of this Consent Decree: $10,000 per failure to notify.

42.    Reporting Requirements.  The following stipulated penalties shall accrue per violation per day for each violation of the reporting requirements of Section VII of this

Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $1500 | 1st through 14th day |
| $2500 | 15th through 30th day |
| $5000 | 31st day and beyond |

43.     SEP Compliance.

      a.     If Defendant fails to satisfactorily complete the SEP by the deadline set forth in Paragraph 21, Defendant shall pay stipulated penalties for each day for which it fails to satisfactorily complete the SEP, as follows:

| Penalty Per Day | Period of Noncompliance |
| --- | --- |
| $1000 | 1st through 14th day |
| $2000 | 15th through 30th day |
| $3000 | 31st day and beyond |

      b.     If EPA determines that Defendant has abandoned work on the SEP, Defendant shall pay a stipulated penalty of $750,000.  The penalty under this subparagraph shall accrue as of the date specified for completing the SEP or the date performance ceases, whichever is earlier.  If EPA determines that the Defendant has abandoned work on the SEP, the daily stipulated penalties in subparagraph 43a. above would cease as of the date of EPA's determination.

44.     Stipulated penalties under this Section shall begin to accrue on the day

after performance is due or on the day a violation occurs, whichever is applicable, and shall

continue to accrue until performance is satisfactorily completed or until the violation ceases.

Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

45.    Defendant shall pay any stipulated penalty within 30 days of receiving the

United States' written demand.

46.    The United States may in the unreviewable exercise of its discretion

reduce or waive stipulated penalties otherwise due it under this Consent Decree.

47.    Stipulated penalties shall continue to accrue as provided in Paragraph 44

during any Dispute Resolution, but need not be paid until the following:

a.    If the dispute is resolved by agreement or by a decision of EPA that

is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing,

together with interest, to the United States within 30 days of the effective date of the agreement

or the receipt of EPA's decision or order.

b.    If the dispute is appealed to the Court and the United States

prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to

be owing, together with interest, within 60 days of receiving the Court's decision or order, except

as provided in subparagraph 47c. below.

c.    If any Party appeals the District Court's decision, Defendant shall

pay all accrued penalties determined to be owing, together with interest, within 15 days of

receiving the final appellate court decision.

48.    Defendant shall pay stipulated penalties owing to the United States in the

manner set forth and with the confirmation notices required by Paragraph 12, except that the

transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

49.     Defendant shall not deduct stipulated penalties paid under this Section in calculating its federal income tax.

50.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

51.     Subject to the provisions of Section XII of this Consent Decree ("Effect of Settlement/Reservation of Rights"), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a violation of the Clean Water Act, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## IX.  FORCE MAJEURE

52.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. "Best efforts" includes anticipating any potential force majeure event and addressing the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any

resulting delay to the greatest extent possible. "Force majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

53.    Defendant shall provide notice orally or by electronic or facsimile transmission as soon as possible, but not later than 72 hours after the time Defendant first knew of, or by the exercise of due diligence, should have known of, a claimed force majeure event. Defendant shall also provide written notice, as provided in Section XIV of this Consent Decree ("Notices"), within seven days of the time Defendant first knew of, or by the exercise of due diligence, should have known of, the event. The notice shall state the anticipated duration of any delay; its cause(s); Defendant's past and proposed actions to prevent or minimize any delay; a schedule for carrying out those actions; and Defendant's rationale for attributing any delay to a force majeure event. Failure to provide oral and written notice as required by this Paragraph shall preclude Defendant from asserting any claim of force majeure.

54.    If the United States agrees that a force majeure event has occurred, the United States may agree to extend the time for Defendant to perform the affected requirements for the time necessary to complete those obligations. An extension of time to perform the obligations affected by a force majeure event shall not, by itself, extend the time to perform any other obligation.

55.    If the United States does not agree that a force majeure event has occurred, or does not agree to the extension of time sought by Defendant, the United States' position shall be binding, unless Defendant invokes Dispute Resolution under Section X of this Consent Decree. In any such dispute, Defendant bears the burden of proving, by a preponderance of the evidence, that each claimed force majeure event is a force majeure event, that Defendant gave the

notice required by Paragraph 53, that the force majeure event caused any delay Defendant claims was attributable to that event, and that Defendant exercised best efforts to prevent or minimize any delay caused by the event.

## X.  DISPUTE RESOLUTION

56.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

57.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

58.     Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of

Position shall include, but may not necessarily be limited to, any factual data, analysis, or opinion

supporting Defendant's position and any supporting documentation relied upon by Defendant.

   59. The United States shall serve its Statement of Position within 45 days of

receipt of Defendant's Statement of Position. The United States' Statement of Position shall

include, but may not necessarily be limited to, any factual data, analysis, or opinion supporting

that position and any supporting documentation relied upon by the United States. The United

States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for

judicial review of the dispute in accordance with the following Paragraph.

   60. Defendant may seek judicial review of the dispute by filing with the Court

and serving on the United States, in accordance with Section XIV of this Consent Decree

("Notices"), a motion requesting judicial resolution of the dispute. The motion must be filed

within ten days of receipt of the United States' Statement of Position pursuant to the preceding

Paragraph. The motion shall contain a written statement of Defendant's position on the matter in

dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set

forth the relief requested and any schedule within which the dispute must be resolved for orderly

implementation of the Consent Decree.

   61. The United States shall respond to Defendant's motion within the time

period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the

extent permitted by the Local Rules.

   62. Except as otherwise provided in this Consent Decree, in any dispute

brought under Paragraph 60, Defendant shall bear the burden of demonstrating that its position

clearly complies with this Consent Decree.

63.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 47.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII ("Stipulated Penalties").

## XI.  INFORMATION COLLECTION AND RETENTION

64.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

    a.     monitor the progress of activities required under this Consent Decree;

    b.     verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

    c.     obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

    d.     obtain documentary evidence, including photographs and similar data; and

    e.     assess Defendant's compliance with this Consent Decree.

65.     Upon request, Defendant shall provide EPA or its authorized representatives splits of any samples taken by Defendant.  Upon request, EPA shall provide

Defendant splits of any samples taken by EPA.

66.     Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

67.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant.

However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

68.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

69.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

70.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

71.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 70. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 70. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or

otherwise.

72.     This Consent Decree is not a permit, or a modification of any permit,

under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and

maintaining complete compliance with all applicable federal, State, and local laws, regulations,

and permits; and Defendant's compliance with this Consent Decree shall be no defense to any

action commenced pursuant to any such laws, regulations, or permits.  The United States does

not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that

Defendant's compliance with any aspect of this Consent Decree will result in compliance with

provisions of the Act, 33 U.S.C. § 1251 *et seq.*, or with any other provisions of federal, State, or

local laws, regulations, or permits.

73.     Application for construction grants, State Revolving Loan Funds, or any

other grants or loans, or other delays caused by inadequate facility planning or plans and

specifications on the part of Defendant shall not be cause for extension of any required

compliance date in this Consent Decree.

74.     This Consent Decree does not limit or affect the rights of Defendant or of

the United States against any third parties, not party to this Consent Decree, nor does it limit the

rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise

provided by law.

75.     This Consent Decree shall not be construed to create rights in, or grant any

cause of action to, any third party not party to this Consent Decree.

## XIII.  COSTS

76.     The Parties shall bear their own costs of this action, including attorneys'

fees, except that the United States shall be entitled to collect the costs (including attorneys' fees)

incurred in any action necessary to collect any portion of the civil penalty or any stipulated

penalties due but not paid by Defendant.

## XIV.  NOTICES

77.     Unless otherwise specified herein, whenever notifications, submissions, or

communications are required by this Consent Decree, they shall be made in writing and

addressed as follows:

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-1-1-08325

with copy to:
Deborah Gitin, Trial Attorney
U.S. Department of Justice (ENRD/EES)
301 Howard St., Suite 1050
San Francisco, CA 94105
Re: DOJ No. 90-5-1-1-08325

and

Director, Compliance Assurance and Enforcement Division
U.S. Environmental Protection Agency
Region VI
Mail Code (6EN)
1445 Ross Ave.
Dallas, Texas 75202

Deputy Regional Counsel, Enforcement
U.S. Environmental Protection Agency
Region VI
Mail Code (6RC-E)
1445 Ross Ave.
Dallas, Texas 75202

To EPA Only:

Director, Compliance Assurance and Enforcement Division
U.S. Environmental Protection Agency
Region VI
Mail Code (6EN)
1445 Ross Ave.
Dallas, Texas 75202

Deputy Regional Counsel, Enforcement
U.S. Environmental Protection Agency
Region VI
Mail Code (6RC-E)
1445 Ross Ave.
Dallas, Texas 75202

To Defendant:

JoAnn Wasicek, Environmental Manager
Borger Refinery
P.O. Box 271
Borger, Texas 79008

with a cc to:

David D. Duncan, Senior Counsel
ConocoPhillips Company
600 N. Dairy Ashford
Houston, Texas 77079-1175

        78.     Any Party may, by written notice to the other Parties, change its designated

notice recipient or notice address provided above.

79.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.  EFFECTIVE DATE

80.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court.

## XVI.  RETENTION OF JURISDICTION

81.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X and XVII, or effectuating or enforcing compliance with the terms of this Decree.

## XVII.  MODIFICATION

82.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

83.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section X of this Decree ("Dispute Resolution"), provided, however, that, instead of the burden of proof provided by Paragraph 62, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII.  TERMINATION

84.     After the conditions listed in subparagraphs 84a. through 84c. below have

all been met, Defendant may serve upon the United States a Request for Termination, stating that

Defendant has satisfied those requirements, together with all necessary supporting

documentation:

      a.     The three-year variance period that began with the issuance of the

           TPDES Permit on January 30, 2007 (and any extension thereof, if

           applicable) has concluded, or TCEQ has adopted and EPA has

           approved site-specific criteria for selenium in Dixon Creek.

      b.     Defendant has maintained continuous satisfactory compliance with

           this Consent Decree and relevant portions of Defendant's TPDES

           Permit for the period of one year immediately preceding the

           expiration of the three-year variance or the approval of site-specific

           criteria; and

      c.     Defendant has paid the civil penalty and any accrued stipulated

           penalties as required by this Consent Decree.

Following receipt by the United States of Defendant's Request for Termination, the Parties shall

confer informally concerning the Request and any disagreement that the Parties may have as to

whether Defendant has satisfactorily complied with the requirements for termination of this

Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall

submit, for the Court's approval, a joint stipulation terminating the Decree.

85.     If the United States does not agree that the Decree may be terminated,

Defendant may invoke Dispute Resolution under Section X of this Decree. However, Defendant shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 58 of Section X, until 60 days after service of its Request for Termination.

## XIX. PUBLIC PARTICIPATION

86.     This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XX. SIGNATORIES/SERVICE

87.     Each undersigned representative of Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

88.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI.  INTEGRATION

89.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXII.  FINAL JUDGMENT

90.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

## XXIII.  APPENDICES

91.     The following appendices are attached to and part of this Consent Decree:

"Appendix A" is the set of excerpts from the TPDES Permit that are specifically relevant to selenium and whole effluent toxicity at the Facility, as well as relevant portions of the "Definitions and Standard Permit Conditions" section of the TPDES Permit.

"Appendix B" is the description of the requirements of the Storm Water Solids Removal SEP.

Dated and entered this 10th day of July, 2008

HON. MARY LOU ROBINSON
United States District Judge
Northern District of Texas

FOR PLAINTIFF UNITED STATES OF AMERICA:

_____   Date: 4/2/08

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

RICHARD B. ROPER
United States Attorney

D. GORDON BRYANT
Assistant United States Attorney

_____   Date: 4/4/08

DEBORAH A. GITIN
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
301 Howard St., Suite 1050
San Francisco, CA 94105
MA Bar # 645126
Phone: (415) 744-6488
Fax: (415) 744-6476
Email: deborah.gitin@usdoj.gov

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

_Grita Y. Nakayama_                    Date: 3-31-2008

GRANTA Y. NAKAYAMA
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Ariel Rios Building, 2201A
1200 Pennsylvania Ave., N.W.
Washington, D.C.  20460

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY (CONT'D):

Date:_____

RICHARD E. GREENE
Regional Administrator
U.S. Environmental Protection Agency
Region VI
1445 Ross Avenue
Dallas, TX 75202-2733

Date: 3/19/08

YERUSHA BEAVER
Assistant Regional Counsel (6RC-EW)
U.S. Environmental Protection Agency
Region VI
1445 Ross Avenue
Dallas, TX 75202-2733
TX Bar #24034319
Phone: (214) 665-6797
Fax: (214) 665-3177
Email: beaver.yerusha@epa.gov

FOR DEFENDANT CONOCOPHILLIPS COMPANY:

Date: 3-26-08

L.M. ZIEMBA
President, U.S. Refining
ConocoPhillips Company
600 North Dairy Ashford
Houston, TX 77079

Date: 3/24/08

DAVID D. DUNCAN
Senior Counsel
ConocoPhillips Company
600 North Dairy Ashford
Houston, TX 77079
TX Bar #06210800
Phone: (281) 293-2851
Fax: (281) 293-6998
Email: David.D.Duncan@ConocoPhillips.com

FOR WRB REFINING, LLC:

_____   Date:_____
BRIAN K. LEVER
Vice President
WRB Refining, LLC
Admin. Building
Spur 119 North
Borger, Texas 79008

_____   Date: 3/24/08
BRADLEY F. STUEBING
Senior Counsel
ConocoPhillips Company
600 N. Dairy Ashford
Houston, Texas 77079
Texas Bar No.: 19441800
Phone:  (281) 293-4578
Fax:  (281) 293-6968
Email: brad.stuebing@conocophillips.com

FOR WRB REFINING, LLC:


_____          Date: _3-22-08_

BRIAN K. LEVER
Vice President
WRB Refining, LLC
Admin. Building
Spur 119 North
Borger, Texas 79008



_____          Date:_____

BRADLEY F. STUEBING
Senior Counsel
ConocoPhillips Company
600 N. Dairy Ashford
Houston, Texas 77079
Texas Bar No.: 19441800
Phone:  (281) 293-4578
Fax:  (281) 293-6968
Email: brad.stuebing@conocophillips.com


*[U.S. V. ConocoPhillips (Borger, Texas) Consent Decree]*  39b